

August 6, 2010

Honorable Magistrate Judge Edward Chen
U.S. District Court for the Northern District of California
Phillip Burton United States Courthouse
450 Golden Gate Avenue, 15th Floor
San Francisco, CA 94102

Re: *Herrington v. Johnson & Johnson Consumer Cos., Inc., et al*
No. C09-1597 EMC (N.D. Cal.)

Dear Judge Chen:

Pursuant to the July 28, 2010 hearing in the above-referenced matter, please find attached the ESI Joint Discovery Protocol agreed upon by the parties.

Sincerely,

*/s/ Stephanie Sheridan*

Stephanie Sheridan
Counsel for Defendant L'Oreal USA, Inc.

cc: Shayne Stevenson, Hagens Berman Sobol Shapiro LLP, Attorney for Plaintiffs
Defense counsel (via e-mail)

## DOCUMENT PRODUCTION PROTOCOL

1. <u>Definitions and Scope</u>. The following protocol shall control the production of discoverable documents and electronically stored information ("Documents") when production commences. As used in this protocol, the term Document(s) shall have the same meaning as used in the Federal Rules of Civil Procedure and case law construing same. Unless otherwise set forth herein, issues concerning the production of Documents shall be resolved with reference to the Federal Rules of Civil Procedure and case law construing same. The terms of any Protective Order and Preservation Order entered in this action shall remain in full force and effect and nothing contained herein is to be construed as a modification of the terms of any such order(s). The term "Receiving Party" shall mean the party receiving production of Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P. 34 or pursuant to initial production of documents identified in the party's Rule 26(a) disclosures. "Producing Party" shall mean the party producing Documents in response to any request for production of documents pursuant to Rule 34 or pursuant to initial production of documents identified in the party's Rule 26(a) disclosures.

2. <u>Commencement of Production</u>. Production of Documents shall proceed at such time, place, and in such sequence as may be agreed to by the Producing Party and the Receiving Party. In the event agreement cannot be reached, the Producing Party and the Receiving Party shall submit their respective positions to the Court, and the Court will issue further orders concerning the productions, as necessary.

3. <u>General Format of Production</u>. Subject to the provisions of paragraph 4, Documents produced in these proceedings originally stored in electronic form shall be produced in electronic image form in the manner as described below. Notwithstanding the foregoing provisions of this paragraph, the Parties reserve the right to request that an alternative format or method of production be used for certain Documents, if such Documents are not susceptible to production in the format or methods of production addressed herein. In that event, the Receiving Party and the Producing Party will meet and confer to discuss alternative production requirements, concerns, formats, methods and/or cost sharing.

4. <u>Production Format</u>. Documents shall be produced according to the following formats:

(a) <u>Paper Documents</u>. Where documents are maintained in hard copy, the Receiving Party is to pay the reasonable copying costs of production of hard copy documents. The Parties will discuss the costs of copying hard copy documents and no production will commence without agreement on the reasonable cost of production. The Parties will share equally the reasonable cost for associated Optical Character Recognition ("OCR"). The Parties will discuss the costs of associated OCR and no production will commence without agreement on the reasonable cost of production. When OCR text is produced, the Producing Party will not warrant its accuracy, and the Requesting Party agrees to accept it "as is." The documents shall be scanned as black and white images at 300 d.p.i. or greater resolution, in a Group 4 compression single-page Tagged Image File Format ("TIFFs" or ".tiff format") and reflect the full and complete information contained in the original Document.

(b) <u>Electronically Stored Information</u>. Except as provided in Paragraph 4(e) below, Document images shall be generated from electronic Documents in a Group 4 compression single-page "TIFF" image that reflects, to the extent practicable, full and complete information that can be captured in a "TIFF" image contained on the original document, together with a load file or functional equivalent specified in Paragraph 4(c) that contains the metadata as set forth in Paragraph 11 and extracted text.

(c) <u>Load File Structure</u>. The Producing Party shall produce a unitization file ("load file") for all produced Documents in accordance with the following formatting, including a separate load file for native Documents:

### Images:

- Single page per image
- Single image per file
- TIFF is default FORMAT unless the following formats are agreed to: jpeg, jpeg2000, giff, png, single image tiff, and bmp
- Filenames should be of the form:
  &lt;Bates num&gt;.&lt;ext&gt;
  Where &lt;Bates num&gt; is the BATES number of the page, and &lt;ext&gt; is the appropriate extension for the image format (.jpg, .tif, .png, etc)

### Index Files:

- CSV files or Concordance Dat file
- First line must contain the column/field names
- Every row must have the same number of columns/fields (empty values are acceptable)
- Text must be encoded in UTF-8
- Values must be enclosed by decimal 17, hex 0x11 (ascii device control 1) or ascii character 254
- Values must be separated by decimal 19, hex 0x13 (ascii device control 3) or ascii character 20

### Native Index Files:

- .CSV Files or Concordance Dat files.
- All lines contain data – first row must NOT contain column headers.
- Every row must have 2 columns/fields (empty values are NOT acceptable)

- 2 -

- First column/field must contain the BATES number for the document

- Second column/field must contain the beginning bates number or bates range of the document and file extension that corresponds to the original format, or in some other reasonable naming convention as agreed by the parties.

- Text must be encoded in UTF-8

- Values must be enclosed by double quotes (ascii character 34)

- Values must be separated by a comma (ascii character 44)

(d) <u>Resolution of Production Issues</u>. Documents that cannot be read because of imaging or formatting problems shall be promptly identified by the Receiving Party. The Producing Party and the Receiving Party shall meet and confer to attempt to resolve problem(s), to the extent the problem(s) are within the Parties' control. The Parties agree that a sample of production will be provided in advance to ensure an absence of technical problems.

(e) <u>Native Format Documents</u>. "Native Format Documents" (or "Native Format") are defined as electronic Documents that have an associated file structure defined by the creating application. The Producing Party shall produce all .XLS spreadsheets, that do not contain redactions, in native format. Any .XLS spreadsheets containing redactions will not be produced in native format. Those redacted .XLS spreadsheets will only be produced in a TIFF image, with the redacted text withheld. The Receiving Party may also request that the Producing Party produce additional file types of electronic Documents in Native Format where the converted image format distorts or causes the information to be improperly displayed. To the extent any such documents exist, the Receiving Party shall provide a list identifying the documents requested in native format and the Producing Party shall use good faith to produce those documents, which do not contain redactions, in native format. All native documents will be produced with the agreed metadata in the load file, and the native format document will be scrubbed.

(f) <u>Color</u>. Documents shall be produced in black and white in the first instance. If a produced Document contains color and that color is necessary to decipher the meaning, context, or content of the document, the Producing Party shall honor reasonable requests for either the production of the original Document for inspection and copying or production of a color image of the Document only after the Parties have met and conferred and agreed on cost sharing.

5. <u>Production Media</u>. A Producing Party shall produce Documents on a CD-ROM, DVD, external hard drive, or such other readily accessible computer or electronic media as the Producing Party and the Receiving Party may hereafter agree upon (the "Production Media"). Information that shall be identified on the face of the Production Media shall include: (1) the production date, and (2) the confidentiality notation required by the Protective Order entered in this case, if the media contains Confidential Information, as defined in the Protective Order. The

- 3 -

face of the Production Media shall also contain the Bates Number range(s) of the Documents on the Production Media, and where not practicable to do so, may be provided in an accompanying letter. If the Producing Party encrypts or "locks" the production, the Producing Party shall include with the production an explanation of how to decrypt the files. The Parties shall discuss in advance cost sharing for the reasonable costs associated with the production media and no production will commence until agreement has been reached on cost sharing.

      6.      Document Unitization. When scanning paper documents into Document Images as described in paragraph 4(a), the producing party should maintain logical unitization. For electronic documents, in which a parent-child relationships exists (*e.g.*, cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) the attachment or other related document shall be scanned contemporaneously and sequentially immediately after the parent document.

      7.      Paper Documents Containing Fixed Notes. Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done in a manner so as not to obstruct other content of the document. If the content of the Document is obscured by the affixed notes, the Document and note shall be scanned separately.

      8.      Duplicates. A Producing Party who has more than one identical copy of an electronic document (*i.e.*, the documents are actual duplicates), the Producing Party need only produce a single copy of that document. A Producing Party need not produce the same electronically stored information in more than one form. A Producing Party may de-duplicate its production across the entire production, or by custodian, at its sole discretion. Furthermore, the parties are not required to produce multiple instances of an electronic message sent to multiple recipients, provided that all of the recipients (including "blind carbon copy" recipients) can be identified from Document(s) or their related metadata to be produced pursuant to this Protocol. Where a subsequent electronic mail message contains all of the portions of an earlier message produced pursuant to this Protocol, it is not necessary for a Producing Party to produce the earlier message in addition to the subsequent inclusive message. If the subsequent inclusive message does not include an attachment to an earlier message, the attachment must also be produced pursuant to this Protocol, in addition to the subsequent inclusive message.

      9.      Bates Numbering. Each Producing Party shall Bates number its production(s) as follows:

      (a)      Document Images. Each page of a produced Document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source document. Unless agreed to by a Producing Party and the Receiving Party, the Bates Number shall contain a two to four letter prefix associated with the Producing Party's name followed by 8 numbers (*e.g.*, ABCD00000001). Unless otherwise agreed between the parties, the Producing Party will use a consistent prefix throughout the matter. Thus, once a party chooses a prefix, *e.g.*, ABC, it shall not later produce a Document using a different prefix, *e.g.*, EFG. No other legend or stamp will be placed on the Document Image other than a confidentiality legend (where applicable), redactions, the Bates Number identified above, and

Case4:09-cv-01597-CW Document205 Filed08/06/10 Page6 of 8

any other internal tracking number that the Producing Party may choose to use. The confidentiality legend shall be "burned" onto each document's image at a location that does not unreasonably obliterate or obscure any information from the source document.

(b) <u>Native Format Documents</u>. In the event Native Format Documents are produced, in order to preserve the integrity of those Native Format Documents, no Bates Number, confidentiality legend or internal tracking number should be added to the content of the Native Document. In addition, Native Format Documents shall also be electronically imaged as described in Paragraph 4. Until such time as the Producing Party and the Receiving Party meet and confer and address procedures for maintaining the confidentiality of Native Format Documents(s) as required in Paragraph 4(e) above, all Native Format files shall remain designated as "Confidential" as set forth in the Protective Order.

10. <u>File Naming Conventions</u>.

(a) <u>Document Images</u>. Each Document Image shall be named with the unique Bates Number for each page of document, as set forth in Paragraph 6 above.

(b) <u>Native Format Documents</u>. Native Format Documents shall be named by the beginning bates number or bates range of the document and file extension that corresponds to the original native format, or in some other reasonable naming convention as agreed by the parties.

11. <u>Meta-Data and Other Supplemental Information.</u>

(a) <u>Meta-Data:</u> To the extent available as meta-data in a particular document, the Producing Party shall produce the meta-data information described below with each production of electronically stored information and in the format described in Paragraph 4 above. The Requesting Party reserves the right to request additional meta-data if relevant. The Parties will negotiate in good faith as to which Party will pay the costs associated with the production of the additional meta data and no additional meta data will be produced absent agreement on cost sharing. For images generated from native electronic documents, a Producing Party shall produce with each production the following fields, where available:

(a) Custodian;
(b) Document title;
(c) E-mail subject line;
(d) Author;
(e) From (Sender/Author);
(f) Document date (date sent for e-mails; latest chronologically date saved for electronic documents);
(g) Date created (date the document was created);
(h) Recipients (all "to"s) for e-mail;
(i) Copyees (all "cc"s) for e-mail;
(j) Blind copyees (all "bcc"s) for e-mail;
(k) MD5 or SHA1 Hash for Native Format Documents;

- 5 -

(l)    Original file path; and
(m)   Original file name.

(b)   <u>Supplemental Information:</u> To the extent that the review application used by a Producing Party adds Supplemental Information in an exportable form, the Producing Party shall produce that information as identified below. If the Producing Party generates this information in an exportable form, it shall also be produced. However, to the extent that such Supplemental Information is not produced in an exportable form, the Parties shall discuss cost sharing for the provision of that Supplemental Information prior to its production, such cost to be borne by the Requesting Party.

Subject to the above, for images generated from native electronic documents, a Producing Party shall produce with each production the following Supplemental Information fields:

(a) Starting Bates Number;
(b) Ending Bates Number;
(c) Confidentiality Designation, if applicable;
(d) Notation of redaction presence, if applicable.

12.   <u>Search Terms</u>. The Receiving Party and the Producing Party shall meet and confer in good faith on search terms to be used to identify electronic documents collected that will be reviewed for possible production. The Producing Party shall first propound its proposed list of search terms to the Requesting Party. An initial list of proposed search terms will be provided to the Requesting Party the no later than August 6, 2010. If the Parties cannot reach agreement as to search terms, the Parties may submit a joint letter brief to Magistrate Judge Chen on September 3, 2010.

The Parties will also meet and confer in good faith on the custodians for which the search terms will be used. If the Parties cannot agree on the custodians for which the search terms may be used, the Parties may seek the assistance of Magistrate Judge Chen in resolving any disputes as to custodians. The Producing Party will run search terms within a reasonable time after the Parties have reached agreement on or Magistrate Judge Chen has ruled on disputes relating to search terms and custodians.

During the course of the litigation, the Receiving Party and the Producing Party may modify the search terms by agreement. If a Requesting Party seeks to have searches done with additional search terms after searches have been completed pursuant to the initial search term list, the Requesting Party must use good faith in seeking to add search terms. If the Requesting Party seeks to add search terms in good faith, the Parties agree to discuss cost sharing for payment of the reasonable costs for the additional searches. Agreement on cost sharing shall occur before the additional search terms are run.

13.   <u>Databases</u>. To the extent discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the Producing Party shall meet and confer with the Requesting Party regarding production of reports from the database.

- 6 -

The Requesting Party will use good faith to determine from which relevant fields from the data base it is seeking information. The Parties will also meet and confer in good faith as to the format of production of information contained in relevant data bases.

14. <u>Privilege Logs</u>. The Producing Parties will produce privilege logs in Excel format or a similar electronic format that allows text searching and organization of data. A Producing Party will produce a separate privilege log for each and every production within 90 days after the production of documents for which a privilege is asserted. When there is a chain of privileged e-mails, the Producing Party need only include one entry on the privilege log for the entire e-mail chain, and need not log each e-mail contained in the chain separately. The Producing Party and the Receiving Party may modify the deadlines for production of privilege logs by agreement.

15. <u>Discovery and Admissibility</u>. Nothing herein shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time.

IT IS SO ORDERED

_____
EDWARD M. CHEN, MAGISTRATE JUDGE
8/10/10
Date

- 7 -