IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THERESA HERRINGTON, ANNA HALEY, JOY
SARJENT, KIMBERLY FOURNIER and CINDY
KING, individually and on behalf of
themselves and all others similarly
situated,

          Plaintiffs,

     v.

JOHNSON & JOHNSON CONSUMER COMPANIES,
INC.; L'OREAL USA, INC.; KIMBERLY-
CLARK CORPORATION; CVS/CAREMARK
CORPORATION; and TARGET CORPORATION,

          Defendants.
_____/

No. C 09-1597 CW

ORDER GRANTING
DEFENDANTS' MOTION
TO DISMISS
(Docket No. 133)

     In this action, Plaintiffs Theresa Herrington, Anna Haley, Joy
Sarjent, Kimberly Fournier and Cindy King allege that Defendants
Johnson & Johnson Consumer Companies, Inc.; L'Oreal USA, Inc.;
Kimberly-Clark Corporation; CVS Pharmacy, Inc., erroneously sued as
CVS/Caremark Corporation; and Target Corporation knowingly
manufactured and sold bath products for children that contain
probable carcinogens and other unsafe substances.  Defendants move
to dismiss Plaintiffs' Second Amended Complaint (2AC) for lack of
subject matter jurisdiction and for failure to state a claim.
Plaintiffs oppose the motion.  The motion was taken under
submission on the papers.  Having considered all the papers

United States District Court
For the Northern District of California

submitted by the parties, the Court GRANTS Defendants' Motion to Dismiss.

BACKGROUND

Plaintiffs filed this putative class action on behalf of themselves and all similarly situated persons who have purchased Defendants' allegedly defective children's bath products. According to Plaintiffs' 2AC, Defendants engaged in unlawful conduct "related to their formulation, manufacturing, distribution and/or sale of cosmetics containing 1,4-dioxane, formaldehyde and/or other ingredients that have not been proven safe . . . ." 2AC ¶ 2. Specifically, Plaintiffs allege that Defendants failed to disclose that their products contain probable carcinogens, other unsafe contaminants and ingredients that have not been shown to be safe. Plaintiffs further contend that Defendants deceived consumers by affirmatively misrepresenting the safety of their products. Plaintiffs aver that "Defendants were in a superior if not exclusive position to know the true state of facts about the safety defects in their bath and personal care products intended for use on babies and children . . . ." 2AC ¶ 22.

Plaintiffs aver that they purchased Defendants' goods for use on their young children. Plaintiffs contend that, had "Defendants disclosed the contaminants in their children's cosmetics and the fact that all ingredients were not proven safe," they would not have purchased the products. 2AC ¶¶ 40-44.

To support their allegations that Defendants' products contain unsafe ingredients, Plaintiffs cite a press release and a report entitled "No More Toxic Tub," both of which were published by the

2

United States District Court
For the Northern District of California

Campaign for Safe Cosmetics.  In the report, the Campaign states
that it detected 1,4-dioxane and formaldehyde in Defendants'
products.  Defs.' Request for Judicial Notice (RJN),[1] Ex. A 6-11.
Citing other unrelated studies, Plaintiffs contend that children
are more susceptible to chemical toxicity than adults.

The 2AC contains eleven causes of action, which are asserted
by varying Plaintiffs and against differing Defendants.  Herrington
and Haley bring claims for violations of California's false
advertising statute, Cal. Bus. & Prof. Code §§ 17500, et seq.;
California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code
§§ 17200, et seq.; and California's Consumer Legal Remedies Act
(CLRA), Cal. Civ. Code §§ 1750, et seq.  Herrington and Haley
assert their FAL and UCL claims against all Defendants.  With
regard to those under the CLRA, Herrington asserts claims against
Johnson & Johnson and L'Oreal, and Haley asserts claims against
Johnson & Johnson, Kimberly Clark, CVS and Target.  Fournier, King
and Sarjent bring claims for violations of thirty-five states' and
the District of Columbia's unfair and deceptive trade practices
acts, against Johnson & Johnson and Kimberly-Clark.  Haley, Sarjent
and Fournier bring claims for breach of implied warranties: Haley
asserts her claims against CVS and Target, Sarjent and Fournier
bring theirs against Johnson & Johnson, and Sarjent, independently,
asserts claims against Kimberly Clark.  Finally, against all

---

[1] Defendants ask the Court to take judicial notice of various
documents, including the Campaign's report.  Plaintiffs do not
oppose Defendants' request.  The Court takes judicial notice of
these documents to the extent that it is not subject to reasonable
dispute that the statements made in these documents were made by
the entities responsible for their publication.  Fed. R. Evid. 201.

United States District Court
For the Northern District of California

Defendants, all Plaintiffs bring claims for intentional misrepresentation; negligent misrepresentation; fraudulent omission and suppression; unjust enrichment; breach of express warranties; and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.  Plaintiffs intend to move for certification of a nation-wide class and various subclasses.

DISCUSSION

I.   Dismissal under Federal Rule 12(b)(1)

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case.  Federal subject matter jurisdiction must exist at the time the action is commenced. Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988).  A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears.  Stock W., Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim.  Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint.  Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).  Because challenges to standing implicate a federal court's subject matter jurisdiction under Article III of the United States Constitution,

they are properly raised in a motion to dismiss under Rule 12(b)(1).  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

To establish standing, a plaintiff must show: "(1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision."  Salmon Spawning & Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1225 (9th Cir. 2008).  A concrete injury is one that is "'distinct and palpable . . . as opposed to merely abstract.'"  Schmier v. U.S. Court of Appeals for 9th Circuit, 279 F.3d 817, 821 (9th Cir. 2002) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)).  The "injury must have actually occurred or must occur imminently; hypothetical, speculative or other 'possible future' injuries do not count in the standings calculus."  Schmier, 279 F.3d at 821 (citing Whitmore, 495 U.S. at 155).

Defendants argue that Plaintiffs do not have standing to sue because they cannot show that they have suffered a concrete, actual injury-in-fact.  Plaintiffs respond that they plead two injuries sufficient to confer standing: "(1) risk of harm to their children resulting from their exposure to carcinogenic baby bath products; and (2) economic harm resulting from the purchase of these contaminated, defective bath products."  Opp'n at 10.

With regard to their allegations that Defendants have exposed their children to a risk of harm, Plaintiffs analogize their action to environmental hazard cases.  They argue that a credible threat of future harm suffices as an injury-in-fact, citing Central Delta

5

<u>Water Agency v. United States</u>, 306 F.3d 938 (9th Cir. 2002). There, the individual plaintiff landowners complained that a federal agency's operating plan was "highly likely to cause the salinity of the water" from a reservoir to exceed acceptable levels, which would hamper their ability to irrigate their crops. <u>Id.</u> at 947.  Even though the injury had not yet occurred, the court concluded that the landowners had suffered an injury-in-fact because they faced a "significant risk that the crops they had planted will not survive as a result of the" agency's decisions. <u>Id.</u> at 948.  Summarizing its holding, the court stated that "a credible threat of harm is sufficient to constitute actual injury for standing purposes . . . ."  <u>Id.</u> at 950; <u>see also</u> <u>Covington v.</u> <u>Jefferson County</u>, 358 F.3d 626, 639 (9th Cir. 2004).

Plaintiffs do not cite controlling authority that the "risk of harm" injury employed to establish standing in environmental cases applies equally to product liability actions.  At least two out-of-circuit cases are instructive on the nature of the increased risk of harm necessary to create an injury-in-fact.  In <u>Sutton v. St.</u> <u>Jude Medical S.C., Inc.</u>, a product liability case, the Sixth Circuit concluded that a plaintiff had standing when he alleged that the implantation of a medical device exposed him to "a substantially greater risk" of harm.  419 F.3d 568, 570-75 (6th Cir. 2005).  In <u>Public Citizen, Inc. v. National Highway Traffic</u> <u>Safety Administration</u>, the D.C. Circuit, addressing a petitioner's standing to challenge agency action, expressed doubts about finding that any increased risk of harm inflicted an injury-in-fact.  489 F.3d 1279, 1293-96 (D.C. Cir. 2007).  The court recognized that,

6

United States District Court
For the Northern District of California

under its precedent, standing was appropriate in such cases "when
there was at least both (i) a substantially increased risk of harm
and (ii) a substantial probability of harm with that increase taken
into account." Id. at 1295.  These cases and Central Delta suggest
that, to the extent that an increased risk of harm could constitute
an injury-in-fact in a product liability case such as this one,
Plaintiffs must plead a credible or substantial threat to their
health or that of their children to establish their standing to
bring suit.

    Plaintiffs have not alleged such a threat.  In essence, they
complain that (1) 1,4-dioxane and formaldehyde are probable human
carcinogens; (2) "scientists believe there is no safe level of
exposure to a carcinogen,"  2AC ¶ 68; (3) children are generally
more vulnerable to toxic exposure than adults; and (4) 1,4-dioxane
and formaldehyde have been detected in Defendants' products.
However, Plaintiffs do not allege that 1,4-dioxane and formaldehyde
are in fact carcinogenic for humans.  Nor do they plead that the
amounts of the substances in Defendants' products have caused harm
or create a credible or substantial risk of harm.[2]  This contrasts
with the showing in Central Delta, in which the landowners cited
the defendant agency's own reports, which predicted that "the
majority of the months during which the standard would be exceeded
are projected to be peak-irrigation months during plaintiffs'
growing seasons." Central Delta, 306 F.3d at 948.  The plaintiffs

---

[2] Indeed, in a July, 2007 statement on 1,4-dioxane, the U.S.
Food and Drug Administration (FDA) stated that the "1,4-dioxane
levels we have seen in our monitoring of cosmetics do not present a
hazard to consumers."  RJN, Ex. B.

United States District Court
For the Northern District of California

also cited reports showing "the negative effects of increased salinity on the various crops that they grow" and themselves reported that "their harvests were damaged in the past due to high salinity in the water." Id. Here, Plaintiffs do not plead facts to suggest that a palpable risk exists. They only allege that 1,4-dioxane and formaldehyde may be carcinogenic for humans, that there could be no safe levels for exposure to carcinogens and that Defendants' products contain some amount of these substances. Indeed, as Plaintiffs plead, the Consumer Product Safety Commission (CPSC) has stated that, although the presence of 1,4-dioxane "is cause for concern," the CPSC is merely continuing "to monitor its use in consumer products." 2AC ¶ 64. The risk Plaintiffs plead is too attenuated and not sufficiently imminent to confer Article III standing.

This case is analogous to Koronthaly v. L'Oreal USA, Inc., 2008 WL 2938045 (D.N.J.), aff'd 2010 WL 1169958 (3d Cir. 2010), which was dismissed on standing grounds. There, the plaintiff was a regular user of the defendants' lipstick, which, according to another report by the Campaign, contained lead. 2008 WL 2938045, at *1. The plaintiff alleged that she had been injured "by mere exposure to lead-containing lipstick and by her increased risk of being poisoned by lead." Id. However, she did not complain of any current injuries. The district court concluded, and the Third Circuit affirmed, that the plaintiff's allegations of future injury were "too remote and abstract to qualify as a concrete and particularized injury." Id. at *5.

8

Plaintiffs' allegations are also similar to those in <u>Levinson</u> <u>v. Johnson & Johnson Consumer Companies, Inc.</u>, 2010 WL 421091 (D.N.J.), and <u>Crouch v. Johnson & Johnson Consumer Companies, Inc.</u>, 2010 WL 1530152 (D.N.J.).  In these cases, the district court dismissed a part of the plaintiffs' actions based on their lack of an injury-in-fact.  <u>Levinson</u>, 2010 WL 421091, at *4; <u>Crouch</u>, 2010 WL 1530152. at *4-*5.  The <u>Levinson</u> and <u>Crouch</u> plaintiffs alleged that Johnson & Johnson's Baby Shampoo contained, among other substances, 1,4-dioxane and formaldehyde.  <u>Levinson</u>, 2010 WL 421091, at *1; <u>Crouch</u>, 2010 WL 1530152, at *1-*2.  The plaintiffs had alleged, as do Plaintiffs here, that the substances were toxic and could cause health problems.  <u>Levinson</u>, 2010 WL 421091, at *1; <u>Crouch</u>, 2010 WL 1530152, at *1.  The court dismissed the plaintiffs' claims on standing grounds, concluding that, with regard to allegations concerning the 1,4-dioxane and formaldehyde, "any potential injury is too remote, hypothetical and/or conjectural to establishing standing in this matter." <u>Levinson</u>, 2010 WL 421091, at *4; <u>Crouch</u>, 2010 WL 1530152, at *5.[3]

---

[3] In these cases, the plaintiffs also plead that the defendants' products contained methylene chloride, a substance that the FDA has banned for use as an ingredient in cosmetics.  <u>See</u> 21 C.F.R. § 700.19.  Initially, the court allowed claims based on methylene chloride to go forward.  <u>Levinson</u>, 2010 WL 421091, at *4; <u>Crouch</u>, 2010 WL 1530152, at *5.  However, in subsequent orders, the court dismissed the plaintiffs' actions in their entirety.  Because the plaintiffs did not allege that the defendants used methylene chloride as an ingredient, the court concluded that the defendants did not run afoul of the FDA ban; thus, the court concluded, the plaintiffs lacked standing to sue.  <u>Levinson v. Johnson & Johnson</u>, 2010 WL 3024847, at *3-*4 (D.N.J.); <u>Crouch v. Johnson & Johnson</u>, 2010 WL 3024692, at *3-*4 (D.N.J.).

United States District Court
For the Northern District of California

As plead, the 2AC does not establish a credible risk of harm that could suffice as a concrete, imminent injury; the threat of which Plaintiffs complain is too speculative and uncertain to confer Article III standing.

Plaintiffs also assert that they experienced an economic injury, in that they unknowingly purchased products containing potential carcinogens and that "they would have never purchased these products had they known of the presence of these contaminants." Opp'n at 13. However, Plaintiffs do not plead a distinct risk of harm from a defect in Defendants' products that would make such an economic injury cognizable. Because they fail to do so, their reliance on Cole v. General Motors Corporation, 484 F.3d 717 (5th Cir. 2007), is misplaced. In Cole, the plaintiffs complained that they suffered economic injury because they had purchased an automobile with a safety module that the manufacturer later discovered to be defective. Id. at 718-19. As relevant here, the court characterized the plaintiffs' injuries as purchasing a defective product and "actual economic harm (e.g., overpayment, loss in value, or loss of usefulness) emanating from the loss of their benefit of the bargain." Id. at 724. As explained above, Plaintiffs have not plead facts to show that Defendants' products are defective or otherwise unfit for use. Nor have Plaintiffs alleged that they overpaid or otherwise did not enjoy the benefit of their bargain.[4] Plaintiffs purchased

---

[4] It is not even clear whether Plaintiffs could assert a benefit-of-the-bargain injury against Defendants. Citing Rivera v. Wyeth-Ayerst, 283 F.3d 315 (5th Cir. 2002), the Cole court noted
(continued...)

Defendants' bath products for children and they do not plead that the products failed to perform.

Neither of the other cases cited by Plaintiffs support their economic injury theory.  The plaintiffs in In re Mattel, Inc. Toy Lead Paint Products Liability Litigation alleged that manufacturers produced toys with unsafe levels of lead.  588 F. Supp. 2d 1111, 1114 (C.D. Cal. 2008).  The toys were subject to recalls ordered by the CPSC.  Id.  Here, however, Plaintiffs do not allege that the levels of the substances in Defendants' products were unsafe.  The CPSC, with regard to Defendants' products, is merely monitoring the presence of 1,4-dioxane.  Plaintiffs also cite Keilholtz v. Lennox Hearth Products Inc., No. 08-0836 CW, which is currently before this Court.  In its order on class certification, the Court concluded that the Keilholtz plaintiffs had standing because they had paid for a fireplace that they could not use; the single pane of glass on the front of the fireplace had been alleged to reach temperatures of 475 degrees, which would cause third degree burns to skin.  2010 WL 668067, at *1 (N.D. Cal.).  In contrast, Plaintiffs have not plead facts that tend to show such a threat of physical harm.  And, unlike in Keilholtz, Plaintiffs have not alleged the loss of value of a durable good that they still own.  Plaintiffs complain about a consumable good that they used to their benefit; they do not even allege that they can return the products of which they complain.

--------

⁴(...continued)
that a plaintiff cannot assert benefit-of-the-bargain damages absent a contract with a manufacturer.  484 F.3d at 722.

United States District Court
For the Northern District of California

1    Indeed, Plaintiffs allege less than what was at issue in other

2    cases where courts concluded that the plaintiffs lacked a

3    cognizable injury.  In other cases, the products complained of were

4    subject to recalls or were reported to have caused injury,

5    suggesting a cognizable risk of harm to the plaintiffs.  See, e.g.,

6    Rivera, 283 F.3d at 316-17; Degelman v. Advanced Med. Optics, Inc.,

7    2010 WL 55874 (N.D. Cal.); Whitson v. Bumbo, 2009 WL 1515597 (N.D.

8    Cal.).  Here, as noted above, Plaintiffs have not plead that such a

9    threat of harm currently exists.

10   Accordingly, Plaintiffs have not plead an injury-in-fact

11   sufficient to confer Article III standing.  They do not allege

12   facts that tend to show an imminent threat of future harm or actual

13   economic damage.  The Court therefore lacks subject matter

14   jurisdiction over Plaintiffs' claims.  Plaintiffs' complaint is

15   dismissed with leave to amend to plead facts that support their

16   standing to bring suit.

17   II.  Dismissal under Rule 12(b)(6)

18   Even though Plaintiffs have not established standing, to

19   provide guidance for any amended pleading, the Court nevertheless

20   evaluates whether they have stated claims.

21   A complaint must contain a "short and plain statement of the

22   claim showing that the pleader is entitled to relief."  Fed. R.

23   Civ. P. 8(a).  Dismissal under Rule 12(b)(6) for failure to state a

24   claim is appropriate only when the complaint does not give the

25   defendant fair notice of a legally cognizable claim and the grounds

26   on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

27   (2007).  In considering whether the complaint is sufficient to

28

12

state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true.  <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing <u>Twombly</u>, 550 U.S. at 555).

    A.   Damages

    Defendants assert that Plaintiffs have not plead facts suggesting that they suffered cognizable damage.  Thus, to the extent that damage is required, Defendants contend that Plaintiffs' claims must be dismissed.  Plaintiffs respond that they have alleged economic damage by "having paid for Defendants' Defective Products, which they would not have purchased had Defendants not engaged in the wrongful conduct . . . ."  Opp'n at 18.  Plaintiffs' argument concerning economic damage is similar to that asserted to establish an injury-in-fact.  Accordingly, Plaintiffs' claims requiring a showing of damage fail for the same reasons.

B.   Herrington and Haley's Claims under the UCL's Fraudulent Prong, the FAL and the CLRA

    California's UCL prohibits any "fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The FAL proscribes "unfair, deceptive, untrue or misleading advertising."  <u>Id.</u> § 17500.  The CLRA makes illegal "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or

13

United States District Court
For the Northern District of California

lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

Defendants contend that Herrington and Haley have failed to plead, as required by Federal Rule of Civil Procedure 9(b), "the who, what, when, where, and how of the alleged fraud." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation and internal quotation marks omitted). Herrington and Haley respond that Rule 9(b) does not apply to these claims because they "are not fraud claims, and do not have the same elements as a fraud claim." Opp'n at 27. This argument is unavailing. The gravamen of their claims is that Defendants made affirmative misrepresentations or failed to disclose material facts about their children's bath products. See, e.g., Opp'n at 25-26 (discussing allegations that Defendants failed to disclose material facts). These allegations are similar to those in Kearns v. Ford Motor Co., in which the Ninth Circuit held that Rule 9(b) applied to a plaintiff's claims under the CLRA and UCL because they were grounded in fraud. 567 F.3d 1120, 1125-26 (9th Cir. 2009). There, the plaintiff plead that Ford's "marketing materials and representations led him to believe that CPO vehicles were inspected by specially trained technicians and that the CPO inspections were more rigorous and therefore more safe." Id. at 1125. He alleged that "he was exposed to these representations through (1) Ford's televised national marketing campaign; (2) sales materials found at the dealership where he bought his vehicle; and (3) sales personnel working at the dealership where he bought his vehicle." Id. at 1125-26. The court held that these averments charged "a unified

14

course of fraudulent conduct," requiring the plaintiff to plead with particularity.  Id. at 1125.  Applying Rule 9(b), the court held the plaintiff's complaint insufficient, stating that

> Kearns fails to allege in any of his complaints the particular circumstances surrounding such representations.  Nowhere in the TAC does Kearns specify what the television advertisements or other sales material specifically stated.  Nor did Kearns specify when he was exposed to them or which ones he found material.  Kearns also failed to specify which sales material he relied upon in making his decision to buy a CPO vehicle.  Kearns does allege that he was specifically told "CPO vehicles were the best used vehicles available as they were individually hand-picked and rigorously inspected used vehicles with a Ford-backed extended warranty."  Kearns does not, however, specify who made this statement or when this statement was made.  Kearns failed to articulate the who, what, when, where, and how of the misconduct alleged.  The pleading of these neutral facts fails to give Ford the opportunity to respond to the alleged misconduct.  Accordingly, these pleadings do not satisfy the requirement of Rule 9(b) that "a party must state with particularity the circumstances constituting fraud . . . ."

Id. at 1126.  Based on their allegations, Herrington and Haley's UCL, FAL and CLRA claims sound in fraud and are therefore subject to the scrutiny of Rule 9(b).[5]

As an initial matter, Herrington and Haley do not plead facts to suggest that the misrepresentations of which they complain were false.  They make no allegations that suggest that Defendants' statements, such as "hypoallergenic" and "dermatologist and allergy tested," were in fact not true.

---

[5] Plaintiffs cite In re Mattel, which is distinguishable. There, the court held that the plaintiffs' claims were not subject to Rule 9(b), explaining that their "complaint neither specifically alleges fraud nor alleges facts that necessarily constitute fraud." 588 F. Supp. 2d at 1118.  Here, Plaintiffs plead causes of action for common law fraud and make allegations that suggest a course of fraudulent conduct.

Herrington and Haley appear to concede this point and instead contend that Defendants' statements were misleading, which could state a cognizable claim under the UCL, FAL and CLRA.  <u>See, e.g.</u>, <u>Morgan v. AT&T Wireless Svcs., Inc.</u>, 177 Cal. App. 4th 1235, 1255 (2009) ("A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL.") (citation and internal quotation marks omitted).  Although allegations of misleading statements could state claims under these statutes, Herrington and Haley have not alleged facts that suggest Defendants deceived them with regard to a cognizable harm.

Even if Herrington and Haley alleged false or misleading statements, they do not plead the circumstances in which they were exposed to these statements.  Nor do they plead upon which of these misrepresentations they relied in making their purchase of products.  Herrington and Haley argue that, because they purchased Defendants' products, they saw "at least the representations made on the product labeling itself."  Opp'n at 26 n.23.  Although Herrington and Haley's purchase of the products suggests that they saw the products' labels, this is nevertheless insufficient because they do not plead upon which representations they relied when making their purchases.  Further, this argument does not account for the challenged statements that do not appear on labeling.  Thus, to the extent that these claims rest on affirmative misrepresentations, Herrington and Haley have failed to plead with sufficient particularity.

United States District Court
For the Northern District of California

Herrington and Haley cite <u>In re Tobacco II Cases</u>, 46 Cal. 4th 298 (2009), to argue that they are not required to allege which representations they specifically saw.  There, addressing the allegations necessary to plead reliance to establish standing to bring a UCL claim, the California Supreme Court stated that "where . . . a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements."  <u>Id.</u> at 328; <u>see also Morgan</u>, 177 Cal. App. 4th at 1257-58.  However, Plaintiffs have not plead that they viewed any of Defendants' advertising, let alone a "long-term advertising campaign" by Defendants.  Even if they did, <u>In re Tobacco II</u> merely provides that to establish UCL standing, reliance need not be proved through exposure to particular advertisements; the case does not stand for, nor could it, a general relaxation of the pleading requirements under Rule 9(b).  <u>See, e.g.</u>, <u>In re Actimmune Mktg. Litig.</u>, 2009 WL 3740648, at *13 (N.D. Cal.).

As for alleged non-disclosures, a modified pleading standard applies "on account of the reduced ability in an omission suit 'to specify the time, place, and specific content' relative to a claim involving affirmative misrepresentations."  <u>In re Apple & AT&TM Antitrust Litig.</u>, 596 F. Supp. 2d 1288, 1310 (N.D. Cal. 2008) (quoting <u>Falk v. Gen. Motors Corp.</u>, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007)).  Herrington and Haley's primary complaint is that Defendants did not disclose information concerning the presence of 1,4-dioxane and formaldehyde.  <u>See, e.g.</u>, 1AC ¶¶ 32,

17

United States District Court
For the Northern District of California

198.   Their failure to plead the time and place of these omissions will not defeat their claims.   And reliance on these non-disclosures could be presumed if their allegations suggested that the omitted facts were material.   See, e.g., Blackie v. Barrack, 524 F.2d 891, 906 (9th Cir. 1975).   However, Herrington and Haley have not made such allegations.   Although they plead that they would not have purchased Defendants' products had they known of the presence of 1,4-dioxane and formaldehyde, a fact is material if a reasonable person "would attach importance to its existence or nonexistence in determining" whether to purchase the product. Morgan, 177 Cal. App. 4th at 1258 (citation and internal quotation marks omitted).   Because Herrington and Haley have not averred facts that show that the levels of these substances caused them or their children harm, under the objective test for materiality, the alleged non-disclosures are not actionable.

Accordingly, even if Herrington and Haley had Article III standing, their claims under the UCL's fraud prong, the FAL and the CLRA would be subject to dismissal for failure to comply with Rule 9(b).   In any amended complaint, they must plead affirmative misrepresentations with particularity and aver how the statements were false or misleading.   In addition, they must plead facts suggesting that the alleged non-disclosures were material.

C.   Herrington and Haley's UCL Claims for Unlawful and Unfair Business Practices

California's UCL prohibits any unlawful or unfair business act or practice.   Cal. Bus. & Prof. Code § 17200.   The UCL incorporates other laws and treats violations of those laws as unlawful business

18

practices independently actionable under state law.  <u>Chabner v.</u>
<u>United of Omaha Life Ins. Co.</u>, 225 F.3d 1042, 1048 (9th Cir. 2000).
Violation of almost any federal, state or local law may serve as
the basis for a UCL claim.  <u>Saunders v. Superior Court</u>, 27 Cal.
App. 4th 832, 838-39 (1994).  In addition, a business practice may
be "unfair . . . in violation of the UCL even if the practice does
not violate any law."  <u>Olszewski v. Scripps Health</u>, 30 Cal. 4th
798, 827 (2003).

> 1.   Unlawful Business Practices

Herrington and Haley plead that Defendants sold "adulterated"
and "misbranded" cosmetics in violation of the Federal Food, Drug,
and Cosmetic Act (FDCA), 21 U.S.C. § 331(a); California's Sherman
Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code §§ 111710,
111775; and the California Safe Cosmetics Act of 2005 (CSCA).

Herrington and Haley have not plead facts suggesting that
Defendants have introduced adulterated cosmetics into commerce.
Under the FDCA and the Sherman Law, a cosmetic is adulterated if
"it bears or contains any poisonous or deleterious substance which
may render it injurious to users under the conditions of use
prescribed in the labeling thereof . . . ."  21 U.S.C. § 361(a);
Cal. Health & Saf. Code § 111670.  As discussed in greater detail
above, Plaintiffs have not alleged that the levels of 1,4 dioxane
and formaldehyde in Defendants' products create a cognizable risk
of injury to their children.

Nor have Herrington and Haley alleged facts to suggest that
Defendants' cosmetics are misbranded.  Under the FDCA and the
Sherman Law a cosmetic may be misbranded if "its labeling is false

19

or misleading in any particular." 21 U.S.C. § 362(a); Cal. Health & Saf. Code § 111730. A cosmetic may also be misbranded if information required by the FDCA or the Sherman Law "is not prominently placed" on the cosmetic's label with "conspicuousness . . . as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use." 21 U.S.C. § 362(c); Cal. Health & Saf. Code § 111745. The fact that Defendants' products may contain the substances of which Herrington and Haley complain does not, by itself, render the products' labels false or misleading. In addition, Herrington and Haley's allegations do not suggest that the products are misbranded. A cosmetic is misbranded if the cosmetic contains an ingredient that has not been "adequately substantiated for safety" and a warning does not appear on its "principal display panel." 21 C.F.R. § 740.10. The required language is: "Warning – The safety of this product has not been determined." Id. FDCA defines an "ingredient" as "any single chemical entity or mixture used as a component in the manufacture of a cosmetic product." Id. § 700.3(e). Herrington and Haley do not plead that Defendants use 1,4-dioxane or formaldehyde as components in the manufacture of their products; instead, they plead that these substances may be byproducts of other substances. 1AC ¶¶ 26, 84. Indeed, the FDA, which is the agency charged with administering the FDCA, states that 1,4-dioxane "is not used as a cosmetic ingredient," but rather is "a contaminant that may occur in trace amounts in certain cosmetics." RJN, Ex. B. To the extent that these are ingredients, they appear to be "incidental

20

ingredients," which need not be disclosed.  21 C.F.R. § 701.3(l).
Such ingredients may be substances "that have no technical or
functional effect in the cosmetic but are present by reason of
having been incorporated into the cosmetic as an ingredient of
another cosmetic ingredient."  Id. § 701.3(l)(1).

Finally, Herrington and Haley have not alleged facts
suggesting a violation of the CSCA, which requires "the
manufacturer of any cosmetic product subject to regulation by the
federal Food and Drug Administration that is sold in this state" to
provide the California Division of Environmental and Occupational
Disease Control with "a complete and accurate list of its cosmetic
products that . . . are sold in the state and that contain any
ingredient that is a chemical identified as causing cancer or
reproductive toxicity . . . ."  Cal. Health & Saf. Code
§ 111792(a).  The CSCA incorporates the definitions of "ingredient"
and "incidental ingredient" from the federal regulations discussed
above.  Id. § 111791.5(d).  Because the substances at issue do not
constitute ingredients, they do not fall within the scope of the
CSCA.  Thus, Herrington and Haley have not alleged a failure by
Defendants to comply with the CSCA's reporting requirement.

Accordingly, even if Herrington and Haley had Article III
standing, their claims under the UCL's unlawful prong would be
subject to dismissal.  They have not plead an underlying cognizable
violation of state or federal law.

2.   Unfair Business Practices

In consumer actions, "a practice is unfair if (1) the consumer
injury is substantial, (2) the injury is not outweighed by any

countervailing benefits to consumers or competition, and (3) the injury is one that consumers themselves could not reasonably have avoided." <u>Morgan</u>, 177 Cal. App. 4th at 1254-55 (citation omitted).

Herrington and Haley make the general allegation that Defendants "engaged in 'unfair' business acts or practices in that Defendants' conduct outweighs any business justification, motive or reason, particularly considering the available legal alternatives that exist in the marketplace." 1AC ¶ 187. However, Herrington and Haley have not alleged facts suggesting that consumers have suffered an injury based on Defendants' conduct. Thus, for the same reasons they lack Article III standing, Herrington and Haley do not state a claim under the unfairness prong of the UCL.

Accordingly, even if Herrington and Haley had Article III standing, their claims under the UCL's unfairness prong would be subject to dismissal. They have not plead a substantial injury to consumers.

D.   Claims under Other States' Unfair Competition Laws

Sarjent, Fournier and King bring claims under the consumer statutes of thirty-five states and the District of Columbia against Johnson & Johnson and Kimberly Clark. They maintain that they state such claims for the same reasons that Herrington and Haley state claims under California's UCL. However, as explained above, Herrington and Haley fail to state such claims.

Accordingly, even if they had Article III standing, Sarjent, Fournier and King's claims against Johnson & Johnson and Kimberly Clark would be dismissed.

22

United States District Court
For the Northern District of California

E.   Claims for Intentional Misrepresentation, Negligent Misrepresentation and Fraudulent Concealment

Plaintiffs have not alleged under which jurisdiction's laws these claims arise.  For the purposes of this motion, the Court applies California law.  Plaintiffs do not dispute that these claims must satisfy the heightened pleading requirements of Rule 9(b).

1.   Intentional Misrepresentation

Under California law, a claim for intentional misrepresentation has seven elements: "(1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff." Manderville v. PCG & S Group, Inc., 146 Cal. App. 4th 1486, 1498 (2007).

As stated above, Plaintiffs fail to plead their fraud allegations with sufficient particularity.  They do not allege how Defendants' statements were false.  And, although they allege several representations were misleading, Plaintiffs do not plead the circumstances in which they observed them.  Indeed, they do not even allege that they saw and relied on the statements of which

23

they complain, aside from their suggestion that they saw and relied on those appearing on the labels of the products they purchased. Without such allegations, Plaintiffs' claims fail because they have not plead reliance on these alleged intentional misrepresentations.

Accordingly, even if they had Article III standing, Plaintiffs' intentional misrepresentation claims would be dismissed.  Plaintiffs must plead how the statements were false or misleading and the circumstances in which they were exposed to the alleged misrepresentations upon which they relied.

　　　　　2.　Negligent Misrepresentation

To state a claim for negligent misrepresentation under California law, a plaintiff must plead "(1) misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the misrepresentation, (4) ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage." Glenn K. Jackson, Inc. v. Roe, 273 F.3d 1192, 1200 n.2 (9th Cir. 2001).

Plaintiffs' negligent misrepresentation claims fail for the same reasons as their claims for intentional misrepresentation. They have not plead how the statements are false or misleading and the circumstances in which they were exposed to the alleged misrepresentations upon which they relied.  Accordingly, even if they had Article III standing, Plaintiffs' negligent misrepresentation claims would be dismissed.

United States District Court
For the Northern District of California

3.   Fraudulent Concealment

To state a claim for fraudulent concealment under California law, a plaintiff must plead that "'(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." <u>Hahn v. Mirda</u>, 147 Cal. App. 4th 740, 748 (2007) (quoting <u>Marketing W., Inc. v. Sanyo Fisher (USA) Corp.</u>, 6 Cal. App. 4th 603, 612-13 (1992)).

Plaintiffs assert that Defendants had a duty to disclose because they had exclusive knowledge of material facts that were not known to Plaintiffs.  However, as noted above, Plaintiffs have not made factual allegations to suggest that these withheld facts were material.

Further, Plaintiffs argue that 21 C.F.R. § 740.10 independently imposes a duty to disclose.  This argument fails because, as discussed above, Plaintiffs have not alleged facts suggesting that 1,4-dioxane and formaldehyde are ingredients as defined by 21 C.F.R. § 700.3(e).  Even if they were ingredients, they appear to be incidental ingredients, which need not be disclosed.  <u>See</u> 21 C.F.R. 701.3(l).

Accordingly, even if they had Article III standing, Plaintiffs' fraudulent concealment claims would be dismissed.

25

Plaintiffs must plead facts to suggest materiality and that 1,4-dioxane and formaldehyde are cosmetic ingredients that must be disclosed.

      F.   Breach of Warranty Claims

          1.   Express and Implied Warranty Claims

     Plaintiffs plead their express and implied warranty claims under the laws of various states and the District of Columbia. However, they allege that these jurisdictions, including California, have adopted the Uniform Commercial Code sections that apply to such claims. <u>See</u> UCC §§ 2-313 (express warranties) and 2-314 (implied warranty of merchantability). Because the laws appear materially similar, the Court applies California law for the purposes of this motion.

     Under California law, courts consider three steps to analyze a claim for breach of an express warranty.

> First, the court determines whether the seller's statement amounts to an affirmation of fact or promise relating to the goods sold. Second, the court determines if the affirmation or promise was part of the basis of the bargain. Finally, if the seller made a promise relating to the goods and that promise was part of the basis of the bargain, the court must determine if the seller breached the warranty.

<u>McDonnell Douglas Corp. v. Thiokol Corp.</u>, 124 F.3d 1173, 1176 (9th Cir. 1997) (citing <u>Keith v. Buchanan</u>, 173 Cal. App. 3d 13 (1985)). Also, in California, consumer goods sold at retail are accompanied by an implied warranty by the manufacturer and the merchant that the goods are merchantable. Cal. Civ. Code § 1792.

     Plaintiffs contend that Defendants' advertisements and other affirmations of fact on their product labeling constitute express

**United States District Court**
For the Northern District of California

warranties.   However, Plaintiffs have not plead facts to suggest that these alleged warranties were breached.   Plaintiffs' allegations do not show that Defendants' products were unsafe or otherwise unfit for use.

Accordingly, even if they had Article III standing, Plaintiffs' claims for breach of express warranties and Haley, Sarjent and Fournier's claims for breach of implied warranties fail.   In any amended pleading, Plaintiffs must plead facts to suggest that Defendants' products did not perform as warranted or that they were otherwise unmerchantable.

2.   Magnuson-Moss Warranty Act Claims

Violations of the Magnuson-Moss Warranty Act (MMWA) can rest on breaches of warranties created under state law.   Birdsong v. Apple, Inc., 590 F.3d 955, 958 n.2 (9th Cir. 2009); Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008). Plaintiffs do not argue that their MMWA claims rest on bases other than their state law warranty claims.   Because those claims fail, their MMWA claims must be dismissed for the same reasons.

G.   Unjust Enrichment Claims

Plaintiffs have not indicated under which jurisdiction's law they bring their unjust enrichment claims.   For the purposes of this motion, the Court applies California law.

California courts appear to be split as to whether there is an independent cause of action for unjust enrichment.   Baggett v. Hewlett-Packard Co., 582 F. Supp. 2d 1261, 1270-71 (C.D. Cal. 2007) (applying California law).   One view is that unjust enrichment is not a cause of action, or even a remedy, but rather a general

27

principle, underlying various legal doctrines and remedies. <u>McBride v. Boughton</u>, 123 Cal. App. 4th 379, 387 (2004).  In <u>McBride</u>, the court construed a "purported" unjust enrichment claim as a cause of action seeking restitution.  <u>Id.</u>  There are at least two potential bases for a cause of action seeking restitution: (1) an alternative to breach of contract damages when the parties had a contract which was procured by fraud or is unenforceable for some reason; and (2) where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct and the plaintiff chooses not to sue in tort but to seek restitution on a quasi-contract theory.  <u>Id.</u> at 388.  In the latter case, the law implies a contract, or quasi-contract, without regard to the parties' intent, to avoid unjust enrichment.  <u>Id.</u>

Another view is that a cause of action for unjust enrichment exists and its elements are receipt of a benefit and unjust retention of the benefit at the expense of another.  <u>Lectrodryer v. SeoulBank</u>, 77 Cal. App. 4th 723, 726 (2000); <u>First Nationwide Sav. v. Perry</u>, 11 Cal. App. 4th 1657, 1662-63 (1992).

In addition to their lack of Article III standing, Plaintiffs have not sufficiently plead a predicate cause of action that would support a restitutionary remedy.  In any amended complaint, Plaintiffs must plead a cause of action for which they would be entitled to restitution.

CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss.  (Docket No. 133.)  The Court's holding is summarized as follows:

28

United States District Court
For the Northern District of California

1.   Plaintiffs have not plead a cognizable injury-in-fact and
therefore lack Article III standing to bring any of their
claims.   The Court dismisses their complaint for lack of
subject matter jurisdiction.   Plaintiffs are granted
leave to amend if they can plead facts that would
establish their standing.

2.   In addition, the following claims are dismissed with
leave to amend to cure the identified deficiencies:

a.   Herrington and Haley's claims under the UCL's
fraudulent prong, the FAL and the CLRA based on
misrepresentations fail because they have not
plead in accordance with Rule 9(b).   In any
amended complaint, they must plead with
particularity, including the circumstances in
which they were exposed to the alleged
misrepresentations and why the statements were
in fact false or misleading.   In addition, they
must plead facts suggesting that the challenged
non-disclosures were material.

b.   Herrington and Haley's claims under the
unlawful and unfair prongs of the UCL fail.
For their claims under the unlawful prong, they
must plead facts suggesting violations of state
or federal law.   To plead a claim under the
unfair prong, they must allege a cognizable
injury to consumers.

29

1       c.    Sarjent, Fournier and King's claims under the

2           consumer statutes of thirty-five states and the

3           District of Columbia fail for the same reasons

4           that Herrington and Haley's UCL claims fail.

5       d.    Plaintiffs' claims for intentional and

6           negligent misrepresentation fail because they

7           have not been plead in accordance with Rule

8           9(b).  Plaintiffs must plead with specificity,

9           including how the statements were false and

10          misleading and the circumstances in which they

11          were exposed to the alleged misrepresentations

12          upon which they relied.

13      e.    Plaintiffs' claims for fraudulent concealment

14          fail because they have not plead facts

15          suggesting that the non-disclosures were

16          material or that Defendants had an independent

17          duty to disclose the allegedly withheld

18          information.

19      f.    Plaintiffs' claims for breach of express

20          warranties and Haley, Sarjent and Fournier's

21          claims for breach of implied warranties are

22          dismissed because they have not alleged a

23          cognizable breach thereof.  Plaintiffs must

24          make factual allegations that tend to show that

25          Defendants' products did not perform as

26          warranted or were otherwise unfit for use.

27

28

1    Because Plaintiffs have not stated a state law

2    warranty claim, their MMWA claims fail.

3    g.    Plaintiffs' claims for unjust enrichment fail

4    because they have not stated a predicate claim

5    warranting such relief.

6    Plaintiffs are granted fourteen days from the date of this

7    Order to file an amended complaint addressing the above-mentioned

8    deficiencies.  If Plaintiffs do so, Defendants may file a motion to

9    dismiss three weeks thereafter, with Plaintiffs' opposition due two

10   weeks following and Defendants' reply due one week after that.  The

11   motion shall be taken under submission on the papers.  Plaintiffs'

12   failure to file an amended complaint in accordance with this Order

13   will result in the dismissal of their claims.

14   If this case has not been dismissed, a case management

15   conference will be held on November 23, 2010 at 2:00 p.m.

16   IT IS SO ORDERED.

17

18   Dated: September 1, 2010

19                                        CLAUDIA WILKEN
                                          United States District Judge

20

21

22

23

24

25

26

27

28

31